1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS CLIFFORD WHITMORE,

11                 Petitioner,                    No. CIV S-09-1526 DAD P

12        vs.

13   RICHARD B. IVES,                             ORDER

14                 Respondent.

15   _____/

16        Petitioner is a federal prisoner proceeding pro se with a petition for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Therein petitioner seeks an order requiring

18   respondent to classify him as being exempt from the federal Inmate Financial Responsibility

19   Program ("IFRP"), and to cease all collection activities under his IFRP payment contract.  In

20   opposing the granting of relief, respondent contends that: (1) this court lacks subject matter

21   jurisdiction over the petition; (2) petitioner has failed to exhaust his administrative remedies; and

22   (3) petitioner's participation in the IFRP is not subject to judicial review.  Upon careful

23   /////

24   _____

25        [1] Pursuant to consent of the parties, filed June 15, 2009 (Doc. No. 4) and December 16,
26   2009 (Doc. No. 9), this matter was assigned to a magistrate judge for all purposes.  See 28 U.S.C.
     § 636(c)(1).

consideration of the record and the applicable law, the court concludes that petitioner is not

entitled to federal habeas relief.  Accordingly, his petition will be denied.

BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution in

Herlong, California (hereinafter Herlong), pursuant to his conviction in the United States District

Court for the Central District of California for multiple violations of federal drug laws.  (Doc.

No. 1 at 2; Doc. No. 14 at 1.)[2]  Petitioner was sentenced to life in prison without the possibility of

parole and was ordered to pay a fine in the amount of two million dollars with respect to one of

the counts upon which he was convicted.  (Doc. No. 14 at 1; Doc. No. 13-1 at 8.)  The Judgment

and Commitment Order entered in the United States District Court for the Central District of

California on April 16, 1991, provided that upon release from imprisonment, petitioner shall

"pay the fine imposed by this judgment and that remains unpaid at the commencement of the

term of community supervision as directed by the Probation Officer."  (Doc. No 13-1 at 10.)

Petitioner was also ordered to pay "a special assessment to the United States in the amount of

$800.00."  (Id.)  The sentence imposed in petitioner's case did not include a restitution order.

(Doc. No. 13 at 4.)

Shortly after petitioner's arrival at Herlong on September 7, 2006, he entered into

an IFRP payment contract "with fixed quarterly payments of $25 . . ." in order to begin payment

of the fines imposed as part of his sentence.  (Doc. No. 1 at 3.)  Pursuant to that contract,

petitioner's account has been credited with payments on his fine totaling $2,026.00.  (Doc. No.

13 at 4.)

Petitioner filed this federal habeas petition on June 3, 2009.  Therein, petitioner

argues that he was coerced into entering the IFRP payment contract and that the United States

Bureau of Prisons ("BOP") does not have the legal authority to collect his financial obligations

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

under the circumstances of his case.  (Doc. No. 1 at 3; Doc. No. 14 at 3.)  Respondent filed an

answer to the petition on February 23, 2010.  (Doc. No. 13.)  Petitioner filed a traverse on March

15, 2010.  (Doc. No. 14.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims Under § 2241

Relief by way of a writ of habeas corpus extends to a prisoner in custody under

the authority of the United States who shows that his custody violates the Constitution, laws, or

treaties of the United States.  28 U.S.C. § 2241(c)(3).  A federal prisoner who challenges the

validity or constitutionality of his underlying conviction must file a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2255.  On the other hand, a federal prisoner challenging the

manner, location, or conditions of the execution of a sentence, as petitioner does here, must bring

a petition for writ of habeas corpus under 28 U.S.C. § 2241.  Hernandez v. Campbell, 204 F.3d

861, 864-65 (9th Cir. 2000); see also Harrison v. Ollison, 519 F.3d 952, 956 (9th Cir. 2008).

II. Petitioner's Claim for Relief

Petitioner's sole claim for federal habeas corpus relief is stated in his petition, in

full, as follows:

> BOP's unlawful authority to fix financial obligation payment
> method pursuant to 18 U.S.C. § 3572(d) & 18 U.S.C. § 3664(f)(2).
>
> Shortly after Petitioner's arrival at FCI-Herlong, Respondent and
> his subordinates, under threat of retaliatory [sic] IFRP "refusal
> status", coerced Petitioner to enter into an IFRP payment
> "contract" with fixed quarterly payments of $25.00 in violation of
> 18 U.S.C. § 3572(d); 18 U.S.C. § 3664(f)(2); & United States v.
> Gunning - 410 F.3d 1145 (9th Cir. 2005).

(Doc. 1 at 3.)[3]  Petitioner requests that this court enter an order requiring respondent to classify

---

[3]  Title 18 U.S.C. § 3572 provides procedures related to "imposition of a sentence of fine
and related matters."  Specifically, it states that"[a] person sentenced to pay a fine or other
monetary penalty, including restitution, shall make such payment immediately, unless . . . the
court provides for payment on a date certain or in installments."  The statute further states that
"[i]f the court provides for payment in installments, the installments shall be in equal monthly
payments over the period provided by the court, unless the court establishes another schedule."

1    him as "IFRP exempt" and to "cease all collection activities immediately and throughout

2    Petitioner's period of incarceration" or, in the alternative, an order directing the sentencing court

3    "to set a payment schedule during the period of Petitioner's incarceration."  (Doc. 14 at 3.)

4            In his traverse, relying on the decisions in <u>United States v. Lemoine</u>, 546 F.3d

5    1042, 1046 (9th Cir. 2008) and <u>Montano-Figueroa v. Crabtree</u>, 162 F.3d 548 (9th Cir. 1998),

6    petitioner argues that the BOP has jurisdiction to collect any financial obligation imposed as part

7    of an inmate's sentence pursuant to the IFRP program only if the judgment orders that the fine be

8    paid "immediately" or "during the period of incarceration."  (<u>Id.</u>)  Petitioner argues that only the

9    sentencing court can determine the amount, time and method of payment by which an inmate

10   must fulfill his financial obligation where, as here, the sentence imposed calls for the fine to be

11   satisfied as a condition of his supervised release and not during the period of incarceration.  (<u>Id.</u>)

12   In this regard, petitioner alleges that:

13           . . . as in the instant matter where there is no Court ordered
             financial obligation during the term of imprisonment the BOP is in
14           clear violation of 18 U.S.C. § 3742(a) and 18 U.S.C. § 3664(n)
             which require that the District Courts determine the amount, time,
15           and method of payment by which a defendant must fulfill his/her
             Court ordered financial obligations.

16
             In the instant matter the District Court ordered the fine and Court
17           assessment be satisfied as a condition of Petitioner's supervised
             release. . . .  Had the District Court for the Central District of
18           California intended that Petitioner satisfy his Court ordered
             obligations during the term of imprisonment the Court would have
19           ordered payment "due immediately" as is the standard practice in
             cases with Court ordered financial obligations to be fulfilled during
20           the period of incarceration.

21           Therefore it is the Petitioner's contention pursuant to the facts
             contained in the judgment and commitment order that the BOP is
22           in violation of the law and the District Court's order by setting and
             enforcing the amount, time, and method of Petitioner's fine
23           payments during the period of incarceration . . . .

24   (<u>Id.</u>)

25   _____

26   Title 18 U.S.C. § 3664 provides procedures "for issuance and enforcement of order of
     restitution."

4

1    Petitioner also argues that he was coerced into entering into the IFRP payment

2 contract upon arrival at Herlong because he was "under threat of retaliatory IFRP 'refusal

3 status.'" (Doc. No. 1 at 3.)  By this allegation, petitioner appears to be claiming that he was

4 coerced by prison officials to agree to participate in the IFRP payment program because, if he did

5 not agree, he would lose the opportunity to participate in prison programs and enjoy other

6 privileges while incarcerated.

7 III.  Subject Matter Jurisdiction

8    Respondent counters that the petition pending before this court should be

9 dismissed for lack of subject matter jurisdiction because petitioner is not challenging the fact or

10 duration of his confinement.  (Doc. No. 13 at 6-7.)  Respondent argues that petitioner's challenge

11 to his participation in the IFRP program, which "creates no liberty interest," is "simply NOT a

12 cause of action within the purview of habeas corpus jurisdiction."  (Id at 3) (emphasis in

13 original).  The court rejects this argument.

14    Petitioner's claim is properly brought under 28 U.S.C. § 2241 because it concerns

15 the manner, location, or conditions of the execution of his sentence, and not the fact of his

16 conviction or sentence.  Moreover, claims similar to the one petitioner raises here have been

17 routinely addressed on the merits by other federal courts in § 2241 actions.  See Lemoine, 546

18 F.3d at 1046 (reaching the merits of petitioner's petition brought pursuant to § 2241 challenging

19 voluntary participation in the IFRP); Hernandez, 204 F.3d at 864 ("Generally . . . petitions that

20 challenge the manner, location, or conditions of a sentence's execution must be brought pursuant

21 to § 2241"); Montano-Figueroa, 162 F.3d at 549 (challenge to IFRP as improper intrusion upon

22 sentencing court's authority may be brought under § 2241); Tucker v. Carlson, 925 F.2d 330, 331

23 (9th Cir. 1990) (observing that a challenge to the execution of a sentence is "maintainable only in

24 a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); see also McGee v. Martinez,

25 627 F.3d 933, 937 (3d Cir. 2010) (claims challenging IRP payment schedule and sanctions for

26 noncompliance "falls under the rubric of a § 2241 habeas petition"); United States v. Diggs, 578

F.3d 318, 319-20 (5th Cir. 2009) (same);  Matheny v. Morrison, 307 F.3d 709, 711-12 (8th Cir. 2002) ("The . . . claims of the petitioners challenging the IFRP's payment schedule for their respective financial obligations . . . concern the execution of [their] sentence[s], and are therefore correctly framed as § 2241 claims brought in the district where the sentence is being carried out.");  Mujahid v. Crabtree, 999 F. Supp. 1398, 1401-04 (D. Or. 1998) (a § 2241 petition is proper when the petitioner, who declined to participate in IFRP, challenges IFRP requirements as conflicting with the sentence imposed and as a usurpation of judicial authority);  Ramirez v. United States, No. 1:08-cv-00633-OWW-JMD-HC, 2009 WL 2044782, at *2 (E.D. Cal. July 9, 2009) (finding that the court had jurisdiction "pursuant to § 2241" over petitioner's claim that under the IFRP he overpaid the government $9,774.48);  Chavez-Torres v. Adler, No. C 07-1501 CW, 2009 WL 649829, at *2 (E.D. Cal. Mar. 11, 2009) (finding that the challenge to prison's authority to collect restitution under the IFRP "is proper under 28 U.S.C. § 2241 because it concerns the manner, location, or conditions of the execution of his sentence and not the fact of his conviction.").

Respondent's argument that the court lacks subject matter jurisdiction over this action is also unsupported by the language of the relevant statutes.  Title 28 U.S.C. § 2255(a) limits its application to prisoners "claiming the right to be released."  Title 28 U.S.C. § 2241 does not contain any such limitation.  Here, petitioner claims that the manner of execution of his sentence violates a specific federal statute.  He does not claim a right to be released.  Under these circumstances, petitioner's claim comes within the express terms of § 2241.  Compare United States v. Thiele, 314 F.3d 399, 401 (9th Cir. 2002) (challenge to restitution order not cognizable under § 2255 because petitioner was not claiming right to be released) with Montano-Figueroa, 162 F.3d at 549 (challenge to timing and amount of fine payments cognizable under § 2241).

For these reasons, the court concludes that it has subject matter jurisdiction over petitioner's challenge to the execution of his sentence.

/////

IV.  Exhaustion

Respondent also argues that the pending petition should be dismissed due to petitioner's failure to exhaust his administrative remedies with respect to the claim contained therein. (Doc. No. 13 at 8-10.)  Petitioner agrees that he did not exhaust his administrative remedies but contends that pursuing exhaustion of his claim would be futile because "the petition raises only issues of law upon which Respondent has repeatedly articulated it's position (which in turn, is mandated by BOP regulations.)."  (Doc. No. 14 at 2.)  Petitioner argues that respondent "could not deviate from those regulations even if it wanted to." (Id.)  He also notes that "the exhaustion requirement . . . can be waived if the process would prove to be futile." (Id.)

Although not specifically required by statute, "as a prudential matter" federal prisoners must exhaust their administrative remedies prior to the filing of a petition seeking relief pursuant to § 2241.  Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004).  See also Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986).  Under the exhaustion doctrine, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed remedy has been exhausted."  Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)).  The Ninth Circuit has explained the purposes served by this exhaustion requirement as follows:

> The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert form; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of an administrative proceeding.

Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).

However, as noted above, "[t]he requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement."  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995).  See also Laing, 370 F.3d at 997.  Thus, if

1   a petitioner has not properly exhausted his claims, the district court in its discretion may either

2   "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his

3   administrative remedies before proceeding in court." Brown, 895 F.2d at 535.  Exhaustion is not

4   required if "(1) administrative remedies would be futile; (2) the actions of the agency clearly and

5   unambiguously violate statutory or constitutional rights; or (3) the administrative procedure is

6   clearly shown to be inadequate to prevent irreparable injury." Terrell v. Brewer, 935 F.2d 1015,

7   1019 (9th Cir. 1991) (decided in the context of a Bivens action).  Exhaustion may also be

8   excused if the agency "has predetermined the issue before it." Navarro v. Smith, No. 1:07-cv-

9   00342-OWW-TAG HC, 2007 WL 1764949, at *3 (E.D. Cal. June 19, 2007) (citing McCarthy v.

10   Madigan, 503 U.S. 140, 145 (1992), superceded on other grounds by 42 U.S.C. § 1997(e)).  See

11   also Laing, 370 F.3d at 1000 -1001 (exhaustion of administrative remedies may not be required

12   when available remedies provide no genuine opportunity for adequate relief or administrative

13   appeal would be futile).  The exhaustion doctrine "creates a strong presumption against, not an

14   absolute bar to, appellate consideration." Terrell, 935 F.2d at 1019.

15          Here, the court will exercise its discretion and excuse petitioner's failure to

16   exhaust his administrative remedies prior to filing the § 2241 petition in this case.  The court

17   finds that exhaustion would be futile in this case because petitioner's claim that the IFRP is

18   unlawful would almost certainly be rejected.  See Mujahid, 999 F. Supp. at 1402 (exhaustion of

19   administrative remedies with regard to challenge to IFRP payments futile because "the petition

20   raises only issues of law upon which respondent has already articulated its position"); Maqueira

21   v. Adler, No. 1:08-cv-01167-DLB (HC), 2009 WL 80355 at *2 (E.D. Cal. Jan. 13, 2009) (finding

22   exhaustion of claims challenging an increase in IFRP payments to be "futile because the claims

23   in all likelihood would have been rejected.").  Accordingly, below the court will address the

24   merits of the claim presented in the pending petition.

25   /////

26   /////

1  V.  Analysis

2          As set forth above, petitioner claims that respondent does not have the authority to

3  collect the fine imposed as part of the sentence in his case under the IFRP because the sentencing

4  court did not order that fine to be due "immediately."  Petitioner argues that, in any event, he felt

5  coerced to volunteer for participation in the IFRP program because of the prison privileges he

6  would lose if he failed to volunteer.[4]

7          Respondent argues that the Attorney General, through the BOP, has the authority

8  to administer petitioner's sentence, including the collection of payments pursuant to the IFRP.

9  (Doc. No. 13 at 10.)  Respondent notes that in Lemoine, the Ninth Circuit held that a prisoner has

10  no constitutional right to any of the benefits that participation in the IFRP program provide.  (Id.)

11  Respondent points out that participation in the IFRP program is voluntary, and argues that

12  petitioner may "voluntarily remove himself from the IFRP at any time" even though "petitioner's

13  receipt of IFRP privileges depends on his participation in that program."  (Id. at 10-11.)

14  Respondent also notes that all of the authorities cited by petitioner in support of his claims

15  involve restitution payments, whereas petitioner was sentenced to pay a fine and not restitution.

16  Respondent argues that, for this reason, those authorities are not on point and do not dictate the

17  result which petitioner seeks here.  (Id. at 11-12.)   In support of these arguments, respondent

18  cites to 18 U.S.C. § 4001(b)(1) and 18 U.S.C. § 4042(a).[5]

19          The court finds that binding authority establishes that petitioner is not entitle to

20  federal habeas relief.  The IFRP is a BOP program that "applies to nearly all post-trial inmates in

21  federal facilities," Lemoine, 546 F.3d at 1046, and "encourages each sentenced inmate to meet

22  ───────────────────

23      [4] Although petitioner requests an order that he be declared "exempt" from having to
make IFRP payments, it appears that petitioner wishes to retain the benefits of participation in
24  the IFRP program even if he does not actually participate.  Otherwise, petitioner could simply
withdraw from this voluntary program.

25      [5] These two code sections cited by respondent merely define the general authority of the
26  Attorney General and the Bureau of Prisons over the control and management of federal
correctional institutions.

9

1  his or her legitimate financial obligations." 28 C.F.R. § 545.10.  "The program provides for

2  development of a financial plan that allows inmates to pay certain enumerated obligations,

3  including court-ordered assessments, restitutions, and fines."  Geiger v. Federal Bureau of

4  Prisons, 487 F. Supp.2d 1155, 1158 (C.D. Cal. 2007).  Under the IFRP program the prison staff

5  develops a financial plan for each inmate and monitors the inmate's progress.  Lemoine, 546

6  F.3d at 1047.  "An inmate is free to decline to participate in the IFRP, but the failure either to

7  participate or to comply with a financial plan created pursuant to the program carries certain

8  consequences."  Id.  These consequences include not receiving certain benefits, such as furlough,

9  pay beyond the maintenance pay level, assigned work detail outside the prison, a higher

10 commissary spending limit, placement in a community-based program, or a release gratuity.  28

11 C.F.R. § 545.11(d); see also Lemoine, 546 F.3d at 1047, 1049.

12        In Gunning, a case cited by petitioner in support of his claim, the Ninth Circuit set

13 aside a sentence in which the sentencing court imposed a restitution order providing that

14 restitution was "payable immediately," but that "during the time of the petitioner's

15 imprisonment, it was to be paid through the BOP Inmate Financial Responsibility Program

16 (IFRP)."  401 F.3d at 1147.  The Ninth Circuit found that a sentence imposed in this manner was

17 an improper delegation to the BOP of the court's responsibility to set the schedule for payment of

18 restitution, as required by the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§

19 3663A.  The court specifically noted that the MVRA charges the trial court with fixing the terms

20 of restitution and that this responsibility is non-delegable.  Id. at 1149.

21        Nonetheless, because in the present case petitioner's sentence did not include a

22 restitution order, the decision in Gunning - which was based on the express terms of the MVRA-

23 does not dictate the result here.  As one district court has observed:

24        The MVRA provides that a sentencing court shall "specify in the
          restitution order the manner in which, and the schedule according
25        to which restitution is to be paid . . . ."  18 U.S.C. § 3664(f)(2).  It
          does not create a similar requirement for the payment of fines or
26        special assessments.  18 U.S.C. § 3664.  Nor did Gunning II set

10

1    any limit on the use of the IFRP to collect fine and assessment
     payments.

2

3         The Ninth Circuit has made a strong distinction between
     the collection of fines and the collection of restitution.  <u>See</u>,
     <u>Montano-Figueroa v. Crabtree</u>, 162 F.3d 548 (9th Cir.1998) (per

4    curiam); <u>see also</u> <u>United States v. Gunning</u>, 339 F.3d 948, 949 (9th
     Cir.2003) <u>(Gunning I)</u> and <u>Gunning II</u>, 401 F.3d at 1150 (stating

5    specifically that the MVRA "does not speak to fines at all .").

6    <u>Williams v. Thomas</u>, Civil No. 09-1222-HO, 2010 WL 1005278, at *2 (D. Or. Mar. 11, 2010)

7    In addition, unlike the restitution order at issue in <u>Gunning</u>, the sentence imposed in petitioner's

8    case did not require him to participate in the IFRP program.  To the contrary, petitioner concedes

9    that upon his arrival at Herlong he signed an Inmate Financial Contract pursuant to which he

10   agreed to participate in the IFRP.  (Doc. 1 at 3.)  The fine imposed as part of petitioner's sentence

11   did not violate the rule set forth in <u>Gunning</u> because the trial court did not delegate the

12   scheduling of Petitioner's fine payments to the BOP.[6]

13        Finally, in <u>Montano-Figueroa</u> - a case cited by both parties here - the petitioner

14   claimed, as does petitioner here, that the IFRP program "impermissibly intrudes upon the

15   sentencing court's responsibility to determine the amount and timing of fine payments."  162

16   F.3d at 548.  Specifically, the petitioner argued in that case that the BOP was "unlawfully

17   'carrying out the sentencing judge's function by regulating the time, dates, and amounts of

18   installment payments'" with respect to the court ordered fine imposed as part of the sentence.  <u>Id.</u>

19

20        [6]  The court notes that in the context of a restitution order, the Ninth Circuit in <u>Lemoine</u>
     found no improper delegation of authority by the sentencing court where the sentence imposed

21   provided for the defendant to "pay restitution during his imprisonment 'at the rate of not less than
     $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility

22   Program.'"  546 F.3d at 1044.  The Ninth Circuit distinguished between the trial court's imposed
     schedule and the revised schedule imposed by BOP under the IFRP.  "While the MVRA forbids

23   the wholesale delegation of scheduling responsibility to the BOP, nothing in the text of the
     statute or our prior decisions places any limits on the BOP's operation of an independent

24   program, such as the IFRP, that encourages inmates voluntarily to make more generous
     restitution payments than mandated in their respective judgments."  546 F.3d at 1048.

25   Accordingly, the Ninth Circuit concluded that the BOP may require inmates who agree
     participate in the IRFP program to make payments in satisfaction of a restitution order at a higher

26   rate than that specified by the sentencing court.

                                      11

at 549.  The Ninth Circuit noted at the outset that Montano-Figueroa's judgment "set[] only the

fine, not the method of payment."  Id. at 550.   The court also observed that under 18 U.S.C. §

3572(d) "[a] person sentenced to pay a fine or other monetary penalty . . . shall make such

payment immediately, unless . . . the court provides for payment on a date certain or in

installments."  Id. at 549.   The Ninth Circuit found that a district court in imposing sentence

could lawfully delegate the timing and manner of the defendant's payment of a fine to the BOP.

Id. at 550.  In addition, the court also found that there was no express delegation in the case

before it in any event.  Id.  In this regard, the court explained:

> Second, unlike all of the circuit authority relied upon by
> Montano, this case does not involve an express delegation.  The
> judgment here sets only the amount of the fine, not the method of
> payment.  Under § 3572(d), Montano's payment was due
> immediately.  Because he was presumably unable to pay, the prison
> program provided an avenue for payment.  The Seventh Circuit in
> United States v. Ahmad, 2 F.3d 245, 249 (7th Cir.1993), has
> endorsed a similar scheme.  "If the sentence specifies the amount
> of restitution, without elaboration, . . . the probation officer will
> assess the defendant's progress toward satisfaction of his debt . .
> . ."  Ahmad, 2 F.3d at 249.  The court reasoned that "[e]verything
> works nicely without any effort to establish installments on the
> date of sentencing and without delegating a judicial function to the
> probation officer."

Id.  Finally, the circuit court also noted that the IFRP has been "upheld generally," and "against

constitutional due process challenges."  Id. at 549.

In light of these binding decisions of the Ninth Circuit, the court concludes that

petitioner is not entitled to federal habeas corpus relief.  The petitioner here, as was the case in

Montano-Figueroa, "simply seeks to continue his current employment at the prison without

making payments toward his outstanding fine obligation."  Id.  As in Montano-Figueroa,

petitioner "has not presented a meritorious constitutional claim that prisons may not maintain

work programs that require inmates to pay court-imposed fines or restitution."  Id.  See also

Geiger v. Federal Bureau of Prisons, 487 F. Supp.2d 1155, 1161 (C.D. Cal. 2007) (rejecting the

petitioner's claim that the IFRP usurps the responsibility of the district court to set a payment

1    schedule for paying restitution imposed under the Victim and Witness Protection Act (18 U.S.C.

2    § 3663(f)(1) rather than under the MVRA).

3              Nor does the IFRP infringe upon or violate the terms of petitioner's sentence.

4    Petitioner's 1991 judgment and commitment order imposed a fine and further provided that

5    during his supervised release, if any, he was required to pay that portion of the fine that "remains

6    unpaid at the commencement" of his supervised release term.  (Doc. No. 13-1 at 9.)  This

7    judgement language, on its face, makes clear that petitioner is to commence paying his fine

8    immediately (see 18 U.S.C. § 3572(d)) including during his incarceration and not during the

9    period of his supervised release.  This interpretation of the 1991 judgment language is also

10   consistent with petitioner's sentence of life in prison without the possibility of parole, a sentence

11   which presumes that he will never be released from prison and never be on supervised release.

12             Petitioner is also not entitled to relief on his claim that his participation in the

13   IFRP was coerced because he would be rendered ineligible for certain privileges in prison if he

14   declined to participate.  "The benefits and consequences of participation in the [IFRP] program

15   are considered a persuasive rewards program to those inmates who chose to participate in the

16   repayment of their debt to the victims and society."  Magueira, 2009 WL 80355, at *3.

17   "Although refusal to participate in the IFRP results in the forfeiture of certain benefits and

18   potential consequences, inmates . . . do not have an pre-existing or absolute right to receive such

19   benefits or to be free from the consequences associated with participation in the IFRP."  Id.

20   (citing Lemoine, 546 F.3d at 1049).  "The use of incentives to encourage compliance in a

21   rehabilitative program does not render it unconstitutional or unlawful."  Lemoine, 546 F.3d at

22   1049 (quoting McKune v. Lile, 536 U.S. 24, 39 (2002) (plurality)).  Thus, "an inmate is free to

23   decline to participate in the IFRP" even though "the failure either to participate or to comply with

24   a financial plan created pursuant to the program carries certain consequences" as set forth in 28

25   C.F.R. § 545.11(d).  Id. at 1047.  Furthermore, the consequences the BOP imposes on those

26   inmates who decline to participate in the IFRP are "reasonably related to the legitimate

13

1   penological interest of rehabilitation."  546 F.3d at 1048.  See also Maqueira, 2009 WL 80355, at

2   *3 (the fact that an inmate will suffer consequences for failure to participate in the IFRP does not

3   render the program involuntary and/or unconstitutional, since the consequences in question relate

4   to the legitimate penological interest of rehabilitation).  Nor do the consequences that accompany

5   a federal prisoner's decision to decline to participate in the IFRP violate petitioner's right to due

6   process.  This is because those consequences do not constitute such an "atypical and significant

7   hardship on the inmate in relation to the ordinary incidents of prison life" that they implicate a

8   liberty interest.  Lemoine, 546 F.3d at 1050 (quoting Sandin v. Conner, 515 U.S. 472, 484-85

9   (1995)).

10          Finally, petitioner is entitled to relief on any possible claim of sentencing error

11  only if the alleged error is not harmless.  Butler v. Curry, 528 F.3d 624, 648 (9th Cir. 2008)

12  (citing Washington v. Recuenco, 548 U.S. 212, 219 (2006)).  Even if it were the case that the

13  sentence imposed in 1991, which included imposition of a fine, is somehow deficient based upon

14  the sentencing court's failure to detail a fine payment schedule, petitioner is not entitled to relief

15  under 28 U.S.C. § 2241 because he has not suffered any harm as a result of any such alleged

16  sentencing error.  This is so because if petitioner wishes to do so, he may stop making payments

17  on his fine by withdrawing from the IFRP program.

18  VI.  Certificate of Appealability

19          Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the

20  "district court must issue or deny a certificate of appealability when it enters a final order adverse

21  to the applicant."  However, such certificates are only required in cases concerning detention

22  arising "out of process issued by a State court" or in a proceeding under 28 U.S.C. § 2255

23  attacking a federal criminal judgment or sentence.  28 U.S.C. § 2253(c)(1).  This federal habeas

24  action arises under 28 U.S.C. § 2241, and does not attack a state court conviction.  Accordingly,

25  no ruling on a certificate of appealability is required, and none will be issued.

26  /////

14

1                                    CONCLUSION

2              For the foregoing reasons, IT IS HEREBY ORDERED that petitioner's

3    application for a writ of habeas corpus is denied and this case is closed.

4    DATED: December 2, 2011.

5

6                                        _____
                                                    Dale A. Drozd
7                                        DALE A. DROZD
                                         UNITED STATES MAGISTRATE JUDGE

8    DAD:8
     whitmore1526.hc
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                            15